UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

PAVEL MOSEYCHUK,                          :

      Petitioner                          :        CIVIL ACTION NO. 3:26-966

v.                                        :             (JUDGE MANNION)

JESSICA SAGE, *et al.*,                   :

      Respondents                        :

## MEMORANDUM

Pending before the Court is Pavel Moseychuk's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, Petitioner's petition will be **DENIED**.

## I.   BACKGROUND

Petitioner, a citizen of Ukraine, entered the United States on July 18, 2001, as a parolee for a period of one year. (Doc. 6-2 at 1). On August 1, 2002, Petitioner's I485 adjustment of status to that of a lawful permanent resident was denied. *Id.*

On November 17, 2005, Petitioner was charged in Allegheny County with DUI: General Impairment/Incapable of Driving Safely – 1st Offense, for which he was sentenced to six months of probation. (Doc. 6-3 at 2). On August 1, 2008, Petitioner was charged in Erie County with DUI: General Impairment/Incapable of Driving Safely – 2nd Offense, for which he received

a sentence of 1-2 years of incarceration. (Doc. 6-3 at 2-3). On November 30, 2009, Petitioner was charged in Erie County with Fleeing or Attempting to Elude Officer and DUI: General Impairment/Incapable of Driving Safely – 2nd Offense (*sic*) and sentenced to another 1-2 years of incarceration. *Id.* at 3. On September 26, 2016, Petitioner was convicted in the Erie County Court of Common Pleas of Use/Possession of Drug Paraphernalia and DUI: Controlled Substance – Schedule I – 4th Subsequent Offense, and sentenced to 11 ½ -23 months of incarceration. *Id.*

On October 10, 2022, Petitioner was convicted in the Erie County Court of Common Pleas of Criminal Trespass – Enter Structure and False Identification to Law Enforcement Officer, and sentenced to one year of probation. *Id.* On March 10, 2022, Petitioner was convicted in the Mercer County Court of Common Pleas of Receiving Stolen Property and sentenced to one year of probation. *Id.* On July 31, 2023, Petitioner was arrested in Erie, Pennsylvania for Receiving Stolen Property—the disposition remains pending, and the case has fallen inactive. *Id.; see also* Docket, CP-25-CR-731-2023.

On July 9, 2025, the Department of Homeland Security ("DHS") detained Petitioner and served him with a Notice to Appear and Record of Deportable/Inadmissible Alien. (Docs. 6-2, 6-3). He was subsequently

charged as removable pursuant to §§237(a)(1)(C)(i) of the Immigration and Nationality Act ("INA"). *Id.* On October 8, 2025, Immigration Judge Dennis Ryan ordered Petitioner removed, and granted Petitioner's "application solely for voluntary departure in lieu of removal" and agreement to waive appeal from all issues, pursuant to INA §240(B)(a). (Doc. 6-4 at 1). Judge Ryan ordered that Petitioner voluntarily depart on or before November 7, 2025. *Id.* Judge Ryan included in his order that the "DHS may extend the . . . deadline to depart for [Petitioner] to resolve his criminal case." *Id.*

Petitioner is currently detained at the Federal Correctional Institution ("FCI") Lewisburg, in the Middle District of Pennsylvania, pursuant to 8 U.S.C. §1231. (Doc. 1 at 2). On May 5, 2026, Respondents filed their response to the instant petition. (Doc. 6). On May 19, 2026, Petitioner's option to file a reply to Respondents' response lapsed. (Doc. 4). Upon initial review of the parties' submissions, the Court found that Respondents' response was insufficient in that it did not identify what efforts, if any, have been made to assist Petitioner in securing the necessary documentation to effectuate his removal. Thus, the Court ordered Respondents to file an additional, supplemental response detailing such information. (Doc. 7). Respondents complied with the Court's order on June 18, 2026. (Doc. 8). Accordingly, the petition is now ripe for disposition.

## II.   LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III.   DISCUSSION

### a. Jurisdiction

The Court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited in some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence

proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the Court's jurisdiction is not barred by §1252(g) as Petitioner's claim does not challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the court of jurisdiction "only to [these] three discrete actions").

§1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the Court's jurisdiction is not barred by §1252(b)(9) as Petitioner does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the Court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as Petitioner does not challenge a discretionary

detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

### b. Exhaustion of administrative remedies

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Petitioner is detained under 8 U.S.C. §1231, which precludes immigration judges from holding a bond hearing. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) (holding that the Government is not required to offer bond hearings after six months of detention to noncitizens held beyond the 90-day removal period set by §1231).

### c. Merits

Petitioner argues that his detention has become unlawfully prolonged and that he, therefore, should be released from custody. Where an immigration detainee has been given a final order of removal, his detention is governed by 8 U.S.C. §1231. Under the statute, the Government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. §1231(a)(1)(A). This ninety day "removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final[;] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[;] (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B).

In *Zadvydas v. Davis*, the Supreme Court held that the Government may not detain aliens indefinitely following a final order of removal. 533 U.S. 678, 689 (2001). Indeed, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. However, the Court noted that it "doubt[ed] that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time." *Id.* at 701. Accordingly, the Court

reasoned that detention for up to 6 months following a final order of removal is "presumptively reasonable." *Id.*

"After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Further, "for detention to remain reasonable, as the period of prior postremoval grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id.* at 701.

Here, Petitioner was ordered removed on October 8, 2025, and waived his ability to appeal. (Doc. 6-4) Therefore, his order of removal became final on the same day. Petitioner filed his petition on April 16, 2026—eight days after the presumptive six-month window lapsed. (Doc. 1). *See Zadvydas*, 533 U.S. at 701. The question therefore becomes whether Petitioner has sustained his burden of providing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner has not made such a showing. Petitioner's petition merely depends upon the six-month period as a basis for requesting relief. The caselaw is clear that Petitioner must do more than simply note the time

- 8 -

period—he must explain the rational belief that there is no chance of his release in the foreseeable future. *See Zadvydas*, 533 U.S. at 701. Petitioner's petition is silent with respect to this issue. (Doc. 1).

Even assuming, *arguendo*, that Petitioner did show no "significant likelihood of removal in the reasonably foreseeable future," the Government sufficiently rebutted this showing. The Government raises two arguments, one which the Court finds is without merit, and the other which the Court holds would rebut Petitioner's claims if he successfully sustained his burden.

First, according to the Government, Petitioner has not departed because Judge Ryan granted the DHS the ability to extend the "deadline to depart for [Petitioner] to resolve his criminal case." (Doc. 6 at 4 (quoting Doc. 6-4 at 1)). The Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") gives the executive branch (including the DHS) sole authority to determine when, under an order of voluntary departure, an alien must depart. *Reynoso-Lopez v. Ashcroft*, 369 F.3d 275, 280 (3d Cir. 2004). However, the Government has not provided any evidence to support its insinuation that the DHS has, in fact, extended the deadline for Petitioner to depart.

Moreover, a search of Petitioner's pending criminal matter indicates that the case was scheduled for trial on May 4, 2026, which was subsequently canceled—not continued or postponed. Docket, CP-25-CR-

731-2023. This suggests to the Court that since his detention, Petitioner has been unable to tend to his pending criminal matter, which has resulted in the case falling inactive. To extend Petitioner's departure deadline in order for him to address an inactive criminal matter is a logical fallacy. The Court accordingly rejects the Government's insinuation that the basis for Petitioner's prolonged detention is due to the DHS's purported extension of Petitioner's deportation deadline. Beyond this claim, however, the Government focuses its response and sur-reply on Petitioner's argument that he has not received travel documents to effectuate his departure.

Petitioner alleges that the DHS has not provided him with proper travel documents to effectively relocate to Poland. (Doc. 1 at 2). Here, the Government explains a line of cases where courts denied similar petitions to allow the Government to obtain travel documents or find a suitable third country for removal—circumstances present in the instant case. (Doc. 6 at 6-7). Specifically, courts within this district have found that the Government sufficiently rebutted the petitioner after periods of prolonged detention longer than the one at issue, and denied relief, where the Government had made efforts at completing the petitioner's removal, maintained contact with the relevant embassy, and requested updates on travel documents. *See e.g., Appiah v. Lowe*, 2025 WL 510974, at *4 (M.D.Pa. Feb. 14, 2025).

Furthermore, in *Qasemi*, the court found the Government's actions to be constitutionally sufficient where it was attempting to obtain a TD from Afghanistan, "a country with which the United States has no formal diplomatic relations and which has altered its own travel requirements during the course of those negotiations." 2025 WL 2938607, at *5. The court further reasoned that:

> Though Petitioner emphasizes the lack of visible progress towards his removal, "the reasonableness of detentions pending deportation cannot be divorced from the reality of the bureaucratic delays that almost always attend such removals" . . . There is no evidence that political conditions with Afghanistan "render removal virtually impossible," nor are the delays in this case "so extraordinarily long" that the proper inference is that a travel document "will likely never issue."

*Id.* (internal citations omitted).

In its supplemental memorandum, the Government details the efforts it has made to assist Petitioner in securing proper documentation to effectuate his removal. (Doc. 8). On October 21, 2025, a request for travel documents was sent to the Ukrainian embassy in New York. (Doc. 8-1, ¶16). On November 14, 2025, the Ukrainian embassies in Washington D.C. and New York indicated that Petitioner could not be verified as a Ukrainian citizen, and that the Ukrainian embassy would not issue travel documents.

- 11 -

*Id.*, ¶17. The Department of State is currently working on approval from Ukraine to repatriate "stateless Ukrainians," including Petitioner. *Id.*, ¶20. The Government avers that because of the Department's ongoing efforts to secure Petitioner's repatriation to Ukraine, and because Petitioner has alternatively been identified as a candidate for third country removal, his removal is significantly likely in the reasonably foreseeable future. *Id.*, ¶22.

The Court is satisfied that the Government has maintained efforts to ensure that Petitioner is deported in the reasonably foreseeable future. Once a TD is issued by the proper consulate, there is a significant likelihood of Petitioner's removal. Although the Court finds that Petitioner did not make a proper showing that he would not be deported in the reasonably foreseeable future, even if he had, the Government rebutted such a showing by demonstrating its efforts to secure proper documentation.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **DENIED**. An appropriate order follows.

**MALACHY E. MANNION**
**United States District Judge**

DATE: 7/14/26
26-966-01

- 12 -